IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

United States of America *ex rel.*     )
MICHAEL SAUNDERS                       )
                                       )
    Plaintiff–Relator,             )
                                       )     Case No. 1:12-cv-00379 (GBL/TCB)
    v.                             )
                                       )
UNISYS CORPORATION,                    )
                                       )
    Defendant.                     )

## AMENDED MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Unisys Corporation ("Unisys")'s Motion to Dismiss for Failure to State a Claim.[1] (Doc. 32.) This case involves allegations that Unisys fraudulently overbilled the United States Army for implementation and maintenance of a global radio-frequency identification network and retaliated against Relator Michael Saunders ("Saunders") after he criticized Unisys for concealing the overbilling. Saunders brings two claims under the False Claims Act ("FCA"): Count I alleging fraudulent overbilling and Count II alleging retaliation.

There are two issues before the Court. The first issue is whether the public-disclosure bar of 31 U.S.C. § 3730(e)(4)(A) operates to bar Count I where Unisys made two reports to the Office of the Inspector General of the Department of Defense disclosing "unacceptable" time-billing practices but denying the existence of overbilling. The Court DENIES Unisys's Motion to

---

[1] Unisys filed its assertions relating to the public-disclosure bar as a Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction. Because the version of the public-disclosure bar controlling in this case is non-jurisdictional, *see infra* at 7–8, the Court converts Unisys's motion into a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

Dismiss as to Count I because Unisys's reports were not made public and did not reveal allegations or transactions of fraud.

The second issue is whether Count II states a claim for retaliation where Saunders conducted his own investigation of Unisys's time-billing practices and, based on the investigation, told Unisys that its DOD-OIG reports concealed a scheme to overbill the Army. The Court DENIES Unisys's Motion to Dismiss as to Count II because Saunders pleads facts sufficient to establish a plausible claim that he engaged in protected activity in furtherance of a viable FCA claim and that Unisys had notice of the protected activity.

## I. BACKGROUND

Until April 13, 2011, Relator Michael Saunders ("Saunders") was a partner in the Federal Systems Division of Defendant Unisys Corporation ("Unisys"). Unisys is an information technology company and has provided radio-frequency identification ("RFID") services to the United States Army since the 1990s. (Doc. 28, ¶ 12.) These services include the installation, operation, and maintenance of electronic tags and readers used to track the movement of Army supplies around the world. (*Id.* ¶ 4.)

On April 7, 2007, Unisys entered into a contract known as Task Order 122 ("TO 122") to provide the Army with RFID services. (*Id.* ¶ 22.) TO 122 contained both a "time and materials" contract ("T&M") and a "firm fixed price award fee" ("FFP") contract. (*Id.* ¶¶ 3, 15.) TO 122 required Unisys's field-service engineers ("FSEs") to bill time as T&M or FFP depending on the specific task performed. (*Id.* ¶ 15.) T&M charges and FFP charges were paid from separate funding sources within the Army. (*Id.* ¶¶ 4, 15–16.)

From May 2007 to October 2007, FSEs billed time in accordance with TO 122. (*Id.* ¶ 24). During this period, Unisys learned that FSEs were billing T&M more frequently than

2

anticipated and risked surpassing the Army's T&M budget. (*Id.*) On November 29, 2007, the Army issued an Order clarifying TO 122. (*Id.* ¶ 26.) The Clarification Order redefined certain T&M tasks as FFP tasks to convert T&M billing into FFP billing and thus alleviate the T&M budget. (*Id.* ¶¶ 25–26.) T&M billing soon dropped, and Unisys realized that TO 122 would become unprofitable. (*Id.* ¶¶ 27–28.)

In February 2008, a group of Unisys senior managers met with TO 122 Project Manager Jim Hayes and Deputy Manager Doug-Ben Herr to discuss TO 122's profitability. (*Id.* ¶¶ 6, 28, 30.) Hayes and Herr explained that the Army had issued the Clarification Order to keep RFID on budget. (*Id.* ¶ 31.) The senior managers told Hayes and Herr that they had "45 minutes to fix it" and restore TO 122's profitability. (*Id.* ¶ 32.) Over the next forty-five minutes, Hayes and Herr devised the "red/blue" plan to ensure that FSEs charged 50 percent of all tasks to T&M and 50 percent of all tasks to FFP. (*Id.* ¶¶ 33–36.) When the senior managers returned, Hayes and Herr announced the red/blue plan and told the senior managers that it would restore TO 122's profitability. (*Id.* ¶¶ 36–37.) Each senior manager reviewed and approved the plan, and for the next two-and-a-half years, FSEs followed Hayes and Herr's billing scheme without regard for how TO 122 designated billing. (*Id.* ¶¶ 39–40.) The red/blue plan resulted in Unisys overcharging the Army by at least $13,474,000. (*Id.* ¶ 42.)

Two years later, in early 2010, Saunders learned that Unisys had received an internal allegation of unethical billing and had begun an investigation into TO 122 billing. (*Id.* ¶¶ 43–44, 45.) On October 8, 2010, Unisys issued a preliminary report on the results of its investigation to Lynn McCormick of the Office of the Inspector General of the Department of Defense ("DOD-OIG"). Saunders was asked to present the report to the Army. (*Id.* ¶¶ 46, 48.) Saunders complied but expressed discomfort at delivering the results because he had not been part of the

3

investigation and was unfamiliar with the report's facts, assumptions, and conclusions. (*Id.* ¶ 48.) Unisys's Associate General Counsel Jeffrey Metzger and Managing Partner Jim Geiger told Saunders not to worry and taught Saunders how to answer potential questions. (*Id.* ¶ 48.) Metzger told Saunders to keep the reports and disclosures to the Army confidential. (*Id.* ¶ 51.)

The preliminary report stated that while Unisys's time-billing practices were "unacceptable," they were motivated by an interest in constraining T&M billing and did not lead to overbilling. (*Id.* ¶ 47.) The final report was issued on January 20, 2011, and reiterated the findings of the preliminary report. (*Id.* ¶ 50.)

Several days later, on January 28, 2011, Geiger told Saunders to terminate Hayes and Herr. (*Id.* ¶ 52.) Saunders refused and asked why Hayes and Herr were being terminated. Geiger refused to explain. (*Id.*) Over the next few weeks, Saunders met with Hayes and Herr. (*Id.* ¶ 53.) They informed Saunders that the DOD-OIG reports concealed a number of crucial facts including that:

- Unisys's senior managers deliberately overcharged the Army by calling the February 2008 meeting and directing Hayes and Herr to concoct the red/blue scheme.

- Senior managers, not project managers, prepared a "memorandum with guidance" identifying the time FSEs should spend on T&M tasks versus FFP tasks and instructing managers that FSEs should finish close to the identified amounts.

- The intent behind the "memorandum with guidance" was to increase, not lower, T&M billing.

- Unisys overcharged the Army by more than $13 million, contrary to Unisys's claim that the "unacceptable" time-billing practices had not led to overbilling.

(*Id.* ¶ 54.)

4

Saunders told Geiger and Metzger what he learned from Hayes and Herr and made several demands, including that Metzger correct the reports and "get to the bottom of these alarming allegations" by interviewing the senior managers who attended the February 2008 meeting. (*Id.* ¶¶ 56–58.) Saunders's demands were denied, and Metzger told Saunders not to discuss the February 2008 meeting, the time-billing scheme, or the reports, and to stop questioning Metzger's investigation, as well as the circumstances behind Hayes and Herr's terminations. (*Id.* ¶ 59.)

In late March 2011, Saunders learned that Metzger was going to meet with DOD-OIG. Saunders asked if he could attend the meeting and share the information he learned from Hayes and Herr. Metzger told him he could not attend. (*Id.* ¶ 64.) On April 13, 2011, Unisys terminated Saunders. (*Id.* ¶ 65.) Unisys later told Saunders that he had not cooperated during the investigation and that Unisys was not pursuing further Army business, even though Unisys "made at least one significant bid for a government contract" after Saunders was fired. (*Id.* ¶ 66.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion should be granted where the plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, which if taken as true, "raise a

right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The requirement for plausibility does not mandate a showing of probability but merely that there is more than a possibility of the defendant's unlawful acts. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

A court's Rule 12(b)(6) review involves separating factual allegations from legal conclusions. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012). In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Though a court must accept the truthfulness of all factual allegations, it does not have to accept the veracity of bare legal conclusions. *Burnette*, 687 F.3d at 180 (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)).

A court must grant a Rule 12(b)(6) motion where a complaint fails to provide sufficient nonconclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *Giacomelli*, 588 F.3d at 196–97 (citing *Iqbal*, 556 U.S. at 678–79, and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969–70 (4th Cir. 1992) (en banc)).

### III. ANALYSIS

The Court DENIES Unisys's Motion to Dismiss as to both counts. First, the Court DENIES Unisys's Motion to Dismiss as to Count I because the reports Unisys produced to DOD-OIG were not made public and did not reveal allegations or transactions of fraud. Thus, the

FCA's public-disclosure bar does not bar Count I. Second, the Court DENIES Unisys's Motion to Dismiss as to Count II because Saunders has pled facts sufficient to establish a plausible retaliation claim where he alleges that he acted in furtherance of a qui tam suit and Unisys had reasonable notice that FCA litigation was a likely possibility.

## A. The Amended Version of the Public-Disclosure Bar Controls Saunders's FCA Claim.

As a threshold matter, the Court notes that the public-disclosure bar was amended in 2010. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010). Unisys now raises the question of whether the 2010 or pre-2010 version of the bar controls. In briefing and at oral argument, the parties referred to, and argued from, the amended version of the public-disclosure bar. (*See* Doc. 33, at 11; Doc. 37, at 11.) Following briefing and oral argument, Unisys filed a notice of supplemental authority, suggesting that the pre-2010 version of the bar might control given the recent Fourth Circuit decision in *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013). (*See* Doc. 40.)

The Court disagrees and finds that the 2010 version of the bar controls. "[T]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (citation and internal quotation marks omitted). In this case, the 2010 amendments to the bar became effective on March 23, 2010, but the reports to DOD-OIG were made later on October 8, 2010, and January 20, 2011, respectively. Thus, when Unisys made its reports, the amended version of the public-disclosure bar was in effect. *Cf. United States ex rel. Rostholder v. Omnicare, Inc.*, No. 12-2431, 2014 WL 661351, at *3 n.3 (4th Cir. Feb. 21, 2014) (applying the pre-2010 version of the bar because the relevant disclosures were made in 2006); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S.

7

280, 283 n.1 (2010) (finding that the 2010 amendments to the public-disclosure bar may not be applied to cases arising before the effective date of the amendments).

In *May*, the Fourth Circuit held that the 2010 amendments rendered the public-disclosure bar into a non-jurisdictional basis for dismissal. Prior to 2010, the public-disclosure bar—with its explicit "[n]o court shall have jurisdiction" language—operated as a jurisdictional bar, depriving courts under certain circumstances of the power to entertain FCA claims. *See May*, 737 F.3d at 916. In 2010, Congress removed this explicit jurisdictional language and replaced it with the decidedly non-jurisdictional language that a court "shall dismiss" an FCA action "unless opposed by the Government." *See* Patient Protection and Affordable Care Act § 10104(j)(2). According to the Fourth Circuit,"these changes make it clear that the public-disclosure bar is no longer a jurisdiction-removing provision." *May*, 737 F.3d at 916. Because the version of the bar controlling in this case is non-jurisdictional, the Court converts Unisys's Rule 12(b)(1) motion to dismiss for lack of jurisdiction into a Rule 12(b)(6) motion to dismiss for failure to state a claim and limits its review of the fraudulent-overbilling claim to the four corners of Saunders's Amended Complaint.

## B. Unisys's Reports to DOD-OIG Were Not Made Public Within the Meaning of the FCA.

The Court DENIES Unisys's motion as to Count I because its reports to DOD-OIG were not public disclosures triggering the public-disclosure bar. Unisys's reports were not public disclosures within the meaning of the FCA because (i) the reports were not made public and (ii) the reports did not reveal allegations or transactions of fraud. Rather, Unisys's reports were made solely to the government and disclosed "unacceptable" billing practices but expressly denied that Unisys engaged in false overbilling.

The FCA imposes civil liability on any person or entity that knowingly submits false claims to the government. 31 U.S.C. § 3729. Congress intended the FCA to "protect the funds and property of the Government from fraudulent claims." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). However, not every claim of fraud is cognizable under the FCA. *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569 (E.D. Va. 2011). The FCA bars relators from pursuing FCA claims

> if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

The public-disclosure bar was enacted to "strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits" in which relators simply feed off previous disclosures of fraud known to the public, rather than exposing independently discovered fraud. *Graham Cnty.*, 559 U.S. at 295. Once a relator's claims have been properly identified, a district court must determine whether the public-disclosure bar operates to dismiss the claims.

The Court finds that Unisys's reports to DOD-OIG did not trigger the public-disclosure bar because the reports were not made public and did not reveal allegations or transactions of fraud. A disclosure triggers the public-disclosure bar if the disclosure (i) was made through a statutorily identified mechanism, (ii) was made public prior to the filing of the complaint, and

9

(iii) revealed essential allegations or transactions. *Davis*, 753 F. Supp. 2d at 579–80. Saunders does not dispute that the first prong of the bar is met because Unisys's reports were made as part of a DOD-OIG investigation. (*See* Doc. 37, at 12.) Saunders argues only that the second and third prongs are not met.

With respect to the publicity prong, the language of § 3730(e)(4)(A) requires that a disclosure of allegations or transactions be placed within the public domain. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). Although the Fourth Circuit has not construed the meaning of the phrase "publicly disclosed," this Court adopts the construction of other circuits addressing the issue. Those circuits generally agree that "publicly disclosed" means that a disclosure has been made to the general public, placed in the public domain, or made in a manner such that it is equally available to a stranger to the fraud should the stranger choose to look for the information. *See United States ex rel. Beauchamp v. Academi Training Ctr.*, 933 F. Supp. 2d 825, 840 & n.28 (E.D. Va. 2013). Under this standard, providing information to a public official is not a public disclosure.[2] *Id.* at 844 & n.35; *see United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 684 (D.C. Cir. 1997) (noting that in amending the FCA in 1986, "Congress thus changed the focus of the [public-disclosure] bar from evidence of fraud inside the government's overcrowded file cabinets to fraud already exposed in the public domain" (citation omitted)). Here, although Unisys's reports were provided to DOD-OIG, they were never placed in the public domain—e.g., on a website—or otherwise

---

[2] Unisys urges the Court to adopt the position of the Seventh Circuit, which holds that "[d]isclosure of information to a competent public official about an alleged false claim against the government" is a disclosure made public under the FCA. *See United States ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999). The Court declines Unisys's invitation because other circuits do not appear to follow the Seventh Circuit on this point. *See Beauchamp*, 933 F. Supp. 2d at 844 n.35 (citing cases holding that disclosure to the government alone is insufficient).

made available to the public. Therefore, the reports were not made public within the meaning of the FCA, and the publicity prong of the public-disclosure bar is not met.

With respect to the allegations-or-transactions prong, it is crucial to recognize that to trigger the bar, a public disclosure must be a disclosure of fraudulent "allegations or transactions" and not merely a disclosure of information. *See Springfield*, 14 F.3d at 653. The D.C. Circuit has opined on this distinction:

> [I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*Id*. at 654. Under this standard, an allegation of fraud is disclosed when the conclusion that fraud has been committed (Z) is exposed, while a transaction of fraud is disclosed when "a misrepresented state of facts *and* a true state of facts" (X and Y) are exposed because from the true and misrepresented state of facts, a reader or listener can infer that a fraud has occurred. *Id*. at 655. Thus, "where only one element of the fraudulent transaction is in the public domain (*e.g.*, X), the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (*e.g.*, Y) *or* allegations of fraud itself (*e.g.*, Z)." *Id*.

Here, Unisys's reports to DOD-OIG did not reveal an allegation or transaction of fraud. Unisys did not inform DOD-OIG that it stood accused of overbilling the Army nor did it inform DOD-OIG of the elements from which a fraud could have been inferred. While Unisys's reports discussed accusations of unethical billing, they were silent on whether Unisys had been accused of fraudulent billing. Unisys's reports to DOD-OIG did not disclose a misrepresented state of facts (that FSEs billed in accordance with TO 122) and a true state of facts (that FSEs billed in accordance with the alleged fraudulent red/blue plan), let alone the elements necessary to state a case of fraud.

Because Unisys's reports to DOD-OIG do not trigger the statutory bar, Unisys's Motion to Dismiss is DENIED as to Count I.

### C. Saunders Pleads Sufficient Facts to Establish a Plausible Claim of Retaliation Under the FCA.

The Court DENIES Unisys's Motion to Dismiss as to Count II because Saunders has sufficiently alleged a retaliation claim under the FCA. Taking the facts of Saunders's well-pleaded Amended Complaint as true, Saunders conducted his own investigation of TO 122 billing, revealed his knowledge of false overbilling to Geiger and Metzger, and shared with Geiger and Metzger his desire to expose the fraud to the government. Saunders was later terminated and told that he had not cooperated with Unisys's investigation of TO 122 billing. Together, these facts establish a plausible claim of retaliation under the FCA.

To bring a successful claim of retaliation, an "employee must prove that (1) he took acts in furtherance of a *qui tam* suit [i.e., engaged in 'protected activity']; (2) his employer knew of these acts; and (3) his employer [took adverse action against] him as a result of these acts." *Eberhardt v. Integrated Design & Const. Inc.*, 167 F.3d 861, 866 (quoting *Zahodnick v. Int'l Business Machines Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)); *see also Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338 (4th Cir. 2010). Unisys challenges only the elements of protected activity and notice. (*See* Doc. 33, at 23.)

With respect to the element of protected activity, the Court finds that Saunders has pled facts sufficient to establish that he engaged in protected activity. An employee engages in protected activity when his or her investigation meets the objective "distinct possibility" of litigation standard. *Glynn v. EDO Corp.*, 710 F.3d 209, 215 (4th Cir. 2013) (quoting *Eberhardt*, 167 F.3d at 869). Under the "distinct possibility" standard, retaliation can occur while the employee is still collecting information but before he or she has put all of the pieces of the puzzle

12

together. *Id.* at 217. Protected activity under the FCA may include internal reporting but only if the employee reports an act that could reasonably lead to a viable FCA lawsuit. *Id.* at 214–15.

Here, when Saunders learned of Unisys's TO 122 investigation, he began his own investigation and sought to take action. Saunders interviewed Hayes and Herr and collected information about an overbilling scheme intended to boost Unisys's profits. Saunders learned that as a result of the scheme, which had been requested, reviewed, and approved by senior managers, Unisys overbilled the Army by more than $13 million and concealed the overbilling in deceptive reports to DOD-OIG. Saunders informed Managing Partner Geiger and Associate General Counsel Metzger of his findings and demanded further investigation, a demand which Geiger and Metzger rebuffed. Saunders also asked Metzger if he could attend Metzger's meeting with DOD-OIG so that Saunders could disclose the information he learned about FSE wrongdoing to DOD-OIG. Metzger refused to have Saunders attend. Because Saunders's threatened disclosure of wrongdoing to DOD-OIG could reasonably have led to a fraud investigation and qui tam suit, Saunders has sufficiently alleged protected activity under the FCA.

With respect to the notice element, the Court finds that Saunders has pled facts sufficient to establish that Unisys had notice of Saunders's protected activity. The notice requirement "may . . . be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." *Eberhardt*, 167 F.3d at 868. After conducting his own investigation, Saunders informed Geiger and Metzger of the fraudulent overbilling he uncovered. Saunders not only told Metzger and Geiger the information he learned from Hayes and Herr, but he also characterized Unisys's reports as concealing fraud and true facts. This characterization is exactly the type of protected activity that the Fourth Circuit

recognizes as providing an employer with notice. *Id.* (actions putting an employer on notice "would include, but are not limited to, characterizing the employer's conduct as illegal or *fraudulent* or recommending that legal counsel become involved" (emphasis added)). Here, Saunders alleges that Unisys's Managing Partner and Associate General Counsel were well aware of Saunders's inquiries and Saunders's intent to disclose his information about wrongdoing to the government.

The facts alleged in Saunders's Amended Complaint plausibly establish that he was engaged in protected activity, that he put Unisys on notice of the protected activity, and that he was terminated as a result. Saunders has met his burden for a retaliation claim, and Unisys's Motion to Dismiss as to Count II is DENIED.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Unisys's Motion to Dismiss as to Count I is **DENIED** because the public-disclosure bar has not been triggered, given that Unisys's reports to DOD-OIG were not made public and did not reveal allegations or transactions of fraud.

**IT IS FURTHER ORDERED** that Unisys's Motion to Dismiss as to Count II is **DENIED** because Saunders pleads sufficient facts to show that he engaged in protected activity when he conducted his own investigation of TO 122 billing, that he put Unisys on notice of his protected activity by informing senior-level employees of his findings, and that he was terminated as a result of his protected activity.

**IT IS SO ORDERED.**

Entered this __2/1__ day of __March__, 2014.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia                                    UNITED STATES DISTRICT JUDGE

14